IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| VICTOR ANDREW APODACA, § | | |
| TCDJ No. 2143720, § | | |
| Petitioner, § | | |
| § | | |
| V. § | Civil No. 2:24-CV-00093-Z-BR |
| § | | |
| BOBBY LUMPKIN, Director, § | | |
| Texas Department of Criminal § | | |
| Justice, Correctional Institutions § | | |
| Division, § | | |
| Respondent.[1] § | | |

### RESPONDENT'S ANSWER WITH BRIEF IN SUPPORT

Through a petition for writ of habeas corpus, Texas state prisoner, Victor Andrew Apodaca challenges his convictions for two counts of aggravated assault of a public servant, evading arrest with a motor vehicle, and making a terroristic threat. However, the petition should be dismissed with prejudice because it is time-barred.

### JURISDICTION

This Court has jurisdiction over the subject matter and the parties because Apodaca's county of conviction is Carson County, Texas, within this court's jurisdiction at the time of filing his petition. 28 U.S.C. § 124(a)(5); *see* 28 U.S.C. § 2241(d); ECF No. 9 at 2.

---

[1]   Pursuant to Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts, "the state officer having custody of the applicant shall be named as respondent."

## PETITIONER'S ALLEGATIONS

The Director understands Apodaca to allege the following grounds for relief:

1. The evidence is insufficient to support a finding of guilt for aggravated assault on a public servant against Texas State Trooper Anthony Mata.

2. [This appears to be a continuation of Petitioner's First Claim.]

3. The evidence is insufficient to support a finding of guilt for aggravated assault on a public servant against Texas State Trooper Brian Ihnen.

4. The evidence supported his affirmative defense of criminal insanity because the State's expert committed perjury.

5. The State erred by charging, indicting, and trying him based on false evidence.

6. The State erred by destroying, suppressing, and tampering with evidence prior to his trial.

7. The State erred by misrepresenting the evidence at trial.

8. The State erred by eliciting false testimony.

9. The State erred by asking the jury to send a message with its verdict during its closing argument.

10. The State erred by attempting to have his co-defendant falsify a statement against him.

11. The State suppressed the alleged weapon, his vehicle, by releasing it to be sold at auction prior to trial in violation of *Brady*.

12. The State suppressed evidence by taking his phone that had pictures of the incident on it in violation of *Brady*.

13. The State suppressed Trooper Mata's statement in violation of *Brady*.

2

14. The State suppressed the body cam footage that was recorded from Trooper Ihnen's person in violation of *Brady*.

15. He was denied effective assistance of trial counsel because his trial counsel aided the State in destroying, suppressing, and tampering with evidence.

16. He was denied effective assistance of trial counsel because his trial counsel failed to investigate the case.

17. He was denied effective assistance of trial counsel because his trial counsel failed to interview any witnesses.

18. He was denied effective assistance of trial counsel because his trial counsel failed to prepare for trial.

19. He was denied effective assistance of trial counsel because his trial counsel did not have a trial strategy.

20. He was denied effective assistance of trial counsel because his trial counsel was incompetent in technical matters. Specifically, he could not print off the insanity evaluation reports made by the State's expert witness to obtain a continuance at trial.

21. He was denied effective assistance of trial counsel because his trial counsel conceded his guilt at trial.

22. He was denied effective assistance of trial counsel because his trial counsel elicited damaging character testimony from a defense witness during the punishment phase of trial.

23. He was denied effective assistance of trial counsel because his trial counsel used manipulative and coercive tactics to deny him his right to testify.

24. He was denied effective assistance of trial counsel because his trial counsel failed to introduce exculpatory evidence. Specifically, he failed to show that the State's expert witness tampered with evidence.

25. He was denied effective assistance of trial counsel because his trial counsel failed to object to evidence obtained in violation of the Fourth Amendment.

26. He was denied effective assistance of trial counsel because his trial counsel failed to call witnesses on his behalf.

27. His trial counsel's numerous errors culminated in the denial of his right to effective assistance of trial counsel.

28. He was denied effective assistance of trial counsel because his trial counsel failed to have his two motions to suppress evidence heard by the trial court.

29. He was denied effective assistance of appellate counsel because his appellate counsel failed to file a complete trial transcript during his direct appeal.

30. He was denied effective assistance of appellate counsel because his appellate counsel failed to comply with "ABA Standards" by not correcting the missing testimony in the appellate record.

31. He was denied effective assistance of appellate counsel because his appellate counsel failed to raise the issue of sufficiency of the evidence in relation to his conviction for assaulting Trooper Ihnen on direct appeal.

32. He was denied effective assistance of appellate counsel because his appellate counsel failed to raise the issue of sufficiency of the evidence in relation to his conviction for assaulting Trooper Mata on direct appeal.

33. He was denied effective assistance of appellate counsel because his appellate counsel failed to raise his claim that the evidence supported his affirmative defense of criminal insanity on direct appeal.

34. The reporter's record was tampered with to remove Trooper Ihnen's conflicting testimony.

35. The court reporter tampered with the reporter's record by adding evidence from the State's expert witness that was not admitted during the trial.

36. The trial court abused its discretion by denying his motions for continuance.

37. The trial court abused its discretion by not allowing him to admit the State expert's report regarding his sanity into evidence.

38. [This appears to be a continuation of Petitioner's 37th Claim.]

39. The trial court abused its discretion by denying his motion to force compliance with a subpoena related to the State's expert's records.

40. The trial court erred by ruling against him in every proceeding.

41. The state habeas court failed to make any factual findings.

ECF No. 9 at 6–30.

## GENERAL DENIAL

The Director denies all of Petitioner's assertions of fact except those supported by the record or specifically admitted herein. In addition, the Director opposes any future, substantive motions filed by Petitioner—including, without limitation, a motion to amend and/or supplement his petition, a motion for an evidentiary hearing, and a motion for equitable tolling—and will respond to any such motions only upon order of the Court.

## STATEMENT OF THE CASE

1. **Procedural History**

The Director has lawful custody of Apodaca pursuant to four judgments and sentences of the 100th District Court of Carson County, Texas, in cause number 6021, styled *The State of Texas v. Victor Andrew Apodaca*. SHCR-02 Writ (Supp.); ECF No. 22-26 at 14–21. Apodaca was charged by indictment with two counts of aggravated assault of a public servant, evading arrest in a motor vehicle, escape, and terroristic threat. SHCR-02 Writ (Supp.); ECF No. 22-26 at 9–10. The State moved to dismiss the escape charge, and on June 29,

2017, a jury found Apodaca guilty of the remaining offenses and sentenced him to sixty years' imprisonment for each count of aggravated assault of a public servant, and twenty years' imprisonment for evading arrest and making a terroristic threat, respectively. SHCR-02 Writ (Supp.); ECF No. 22-26 at 14–21, 24.

On February 25, 2019, the Seventh Court of Appeals of Texas affirmed the judgment of the trial court after correcting a clerical error in two of the judgments and ordering a corrected Bill of Costs and Order to Withdraw Funds in an unpublished opinion. *Apodaca v. State,* slip op.; ECF No. 21-26. The Texas Court of Criminal Appeals subsequently refused his petition for discretionary review on June 5, 2019. Apodaca v. State, PDR No. PD-0269-19; ECF No. 21-30.

Apodaca filed an application for state writ of habeas corpus challenging his conviction on February 23, 2023. SHCR-02 Writ, Vol. 1; ECF No. 22-17 at 18. *Richards v. Thaler*, 710 F.3d 573, 578–79 (5th Cir. 2013) (The prison mailbox rule applies to state habeas applications). On September 27, 2023, the Texas Court of Criminal Appeals denied the application without written order. SHCR-02 (Action Taken); ECF No. 22-15.

Apodaca filed his federal petition on March 8, 2024, and this proceeding followed. ECF No. 1 at 31; *See Windland v. Quarterman*, 578 F.3d 314, 318 (5th Cir. 2009), *citing Spotville v. Cain,* 149 F.3d 374, 376-78 (5th Cir. 1998) (for purposes of determining the applicability of the AEDPA, a federal petition is filed on the date it is placed in the prison mail system).

2. **Statement of Facts**

The Seventh Court of Appeals best summarized the facts presented at trial as follows:

> The State's evidence at trial established that, on September 13, 2015, Sergeant Rangel was participating in the search of a vehicle alongside Interstate 40 when he observed a driver operating a Cadillac in a very robotic fashion. When the traffic stop was completed, Sergeant Rangel and his partner caught up with the Cadillac on Interstate 40 and noticed that it suddenly slowed below the speed limit. Although Sergeant Rangel did not observe any traffic violations, he did decide to follow the vehicle into a Love's truck stop hoping to abate his suspicions by speaking with the driver.
>
> Without turning on his overhead lights or hindering the Cadillac's ability to leave the gas pumps in any way, Sergeant Rangel pulled into the truck stop. He was wearing his trooper uniform and badge. He walked over to the Cadillac and knocked on the driver-side window. Appellant rolled down the window and Sergeant Rangel asked him if he was willing to speak with him. Appellant agreed. Sergeant Rangel then asked Appellant if he was willing to speak to him outside the vehicle and Appellant complied.
>
> When Appellant emerged from the Cadillac, the belt to his pants was broken. When Sergeant Rangel noted that his belt was broken, Appellant explained that he broke it while seated in the Cadillac. Sergeant Rangel observed that Appellant was experiencing a high level of anxiety as evidenced by extreme nervousness and an inability to stand still or be quiet. When Sergeant Rangel asked his name, he gave his name as Andrew Rodriguez. He could not produce any identification and said he was traveling from Amarillo to Arkansas. Before questioning the passenger, Sergeant Rangel gave Appellant a pad and pencil and asked him to write his name and identifying information. This time he wrote down a different name—Victor Apodaca.
>
> On further inquiry, Sergeant Rangel found out the Cadillac was plated out of New Mexico and was registered to two females. He also discovered that the passenger did not have any identification on him and did not know the destination. At this point, he returned to his patrol vehicle and requested assistance.

7

He then ran Appellant's identifying information through his computer and received nothing. About this time, Sergeant Ihnen, assigned to the K-9 unit, arrived to assist him.

Sergeant Rangel returned to Appellant and asked if he could search his person. Appellant assented. He then asked if he could search the vehicle and Appellant refused. Sergeant Rangel then conducted an "open air" canine sniff around the outside of the Cadillac and the dog alerted. When he advised Appellant of the results of the "open air" sniff, Appellant admitted there was contraband in the vehicle. Upon searching its interior, Sergeant Rangel discovered some drug paraphernalia and a bag containing a small amount of marijuana. About the time he completed his search, Sergeant Rangel heard Sergeant Ihnen calling him. When he looked up, Sergeant Ihnen was struggling with Appellant.

While Sergeant Rangel was searching the Cadillac, Appellant apparently became very agitated and started yelling that the troopers could not search his vehicle. About this same time, Appellant started making gestures and hand signals to the passenger, who had exited the vehicle and was lying face down on the ground. Sergeant Ihnen attempted to put handcuffs on Appellant, but he resisted and began pulling away. At this point, Sergeant Ihnen realized things were getting out of hand and he yelled for Sergeant Rangel. Even with the help of Sergeant Rangel, however, Appellant managed to get away from the two troopers and started yelling that he "had a bomb in his ass and he was going to blow up everyone at the station." Appellant told his passenger to corroborate his threat. While these threats were being made, there were bystanders in the Love's parking lot watching the events unfold.

About this time, Trooper Mata arrived and observed that the two troopers had their tasers drawn and pointed at Appellant, who was standing next to his vehicle. Trooper Mata could hear Appellant yelling that "he had a bomb up his ass and he was going to blow everybody up."

During the commotion, Appellant was able to jump into the driver's seat of his vehicle and he began revving the engine. Sergeant Ihnen managed to get Appellant in a headlock and Trooper Mata, who had been trying to outflank Appellant, was partially in the vehicle on the passenger side, attempting to grab the keys. Once Appellant was able to get the vehicle in "Reverse," he suddenly backed up toward the front entrance to the truck

stop before veering toward the diesel pumps. During this maneuver, both troopers were hanging onto the vehicle and being dragged through the parking lot.

Trooper Mata managed to disengage himself from the Cadillac before it came to a stop just short of the diesel pumps. Sergeant Ihnen somehow managed to get the Cadillac in "Park" and was struggling with Appellant while yelling for him to stop. Both troopers were also attempting to use their electroshock guns to subdue him. Sergeant Ihnen managed to shoot one electroshock prong into Appellant, at which point he threatened that Sergeant Ihnen was "going to die."

When the vehicle sped away in reverse, Sergeant Ihnen was the only one in the Cadillac with Appellant. He was shooting Appellant with his electroshock gun to no avail and his right foot was being dragged by the vehicle. When the electroshock gun proved ineffective, Sergeant Ihnen began hitting Appellant to persuade him to stop. Appellant managed to get the Cadillac in "Drive" and exited the parking lot heading down an Interstate 40 ramp traveling the wrong direction. He kept threatening Sergeant Ihnen that he "was going to die." Sergeant Ihnen managed to push himself from the vehicle onto the parking lot exit ramp, causing him to land on his back and hit his head on the pavement. [FN 8]

Appellant later abandoned the Cadillac in an open field and escaped to Amarillo. Acting on a tip, Texas Rangers located Appellant at a residence and called an Amarillo SWAT team to assist. When the SWAT team confronted Appellant by loudspeaker, he responded that he had hostages in the house. After a substantial period of negotiation, the SWAT team deployed two rounds of chemical agents into the residence. Shortly thereafter, the screen door opened and Appellant appeared behind a woman. The SWAT team's repeated commands to surrender were ignored and Appellant continued to use the woman as a shield. He had a pistol tucked in his waistband and an arm around the woman's neck. A SWAT officer slowly advanced toward Appellant and managed to strike him with the muzzle of his gun. With the assistance of other officers, Appellant was handcuffed and taken to jail.

9

> [FN 8] He was taken to a nearby hospital where he was treated for concussion or brain swelling and was out of work in excess of a month.

*Apodaca v. State,* slip op.; ECF No. 21-26 at 4–8.

## STATE COURT RECORDS

Records of Apodaca's state habeas proceedings and accompanying table of contents were filed with the Court on August 14, 2024. ECF Nos. 20–22. A copy of the records will not be forwarded to Petitioner. *See Sixta v. Thaler*, 615 F.3d 569, 573 (5th Cir. 2010). Attached as an "Appendix" are portions of the state court record relied on by the Director, designated as "Exhibits."

## LIMITATIONS/EXHAUSTION/SUCCESSIVE PETITION

Because Apodaca's petition is barred by the federal habeas corpus statute of limitations, any inquiry into exhaustion is unnecessary to the resolution of this motion. The statute of limitations is a threshold issue which will preclude any consideration of the merits of petitioner's claims. Pending consideration of the instant answer, the Director specifically reserves the right to argue whether Apodaca's claims are barred by the procedural default doctrine and whether Apodaca sufficiently exhausted his state court remedies as required by 28 U.S.C. Sections 2254(b) and (c). Apodaca's petition is not successive as defined by 28 U.S.C. § 2244(b).

## ANSWER

### I. Standard of Review

As it relates to Apodaca's claims for federal habeas corpus relief, AEDPA provides a one-year period for filing federal habeas corpus petitions by persons in custody pursuant to the judgment of a State court:

(d) (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

## II. Apodaca's Petition Must Be Dismissed With Prejudice Because It Is Time-Barred.

Here, Apodaca's conviction became final on September 3, 2019, when the period for timely filing a petition for writ of certiorari with the Supreme Court expired. *See Roberts v. Cockrell*, 319 F.3d 690, 693–95 (5th Cir. 2003) (finality determined by expiration of time for filing further appeals); Sup. Ct.

R. 13.1 (a petition for a writ of certiorari to review a judgment entered by a state court of last resort is timely when it is filed within 90 days after entry of the judgment). Thus, the federal limitations period expired one year later, on September 3, 2020, absent statutory tolling.

AEDPA provides that "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section." 28 U.S.C. § 2244(d)(2). Apodaca's state application for writ of habeas corpus did not toll the limitations period because it was filed after the limitations period ceased to operate. *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) ("state habeas application did not toll the limitation period under § 2244(d)(2) because it was not filed until after the period of limitation had expired"). Thus, Apodaca's instant petition, filed on March 8, 2024, is over three and a half years (1282 days) too late.

The claims presented by Apodaca in the instant petition do not concern a constitutional right recognized by the Supreme Court within the last year and made retroactive to cases on collateral review. In addition, the record does not reflect that any unconstitutional "State action" impeded Apodaca from filing for federal habeas corpus relief prior to the end of the limitations period. Furthermore, the factual predicate date will not salvage Apodaca's claims. Apodaca's allegations relate to his two convictions for aggravated assault of a public servant, and his convictions for evading arrest with a motor vehicle and making a terroristic threat. Thus, the claims were discoverable by the time his conviction became final on September 3, 2019.

Additionally, Apodaca fails to show that the untimeliness of his federal habeas petition should be excused under any established equitable exception. In *Holland v. Florida*, the Supreme Court held that the AEDPA limitations period may be equitably tolled, but only when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." 130 S.Ct. 2549, 2562 (2010). That is, to receive the benefit of equitable tolling, a petitioner must prove that he pursued habeas relief with "reasonable diligence" despite any demonstrated extraordinary circumstance. *Id.* at 2562; *see*, *e.g.*, *Palacios v. Stephens*, 723 F.3d 600, 604–05, 607 (5th Cir. 2013) ("[P]etitioners seeking to establish due diligence must exercise diligence even when they receive inadequate legal representation."); *cf. Mathis v. Thaler*, 616 F.3d 461, 474 (5th Cir. 2010) ("[E]quity is not intended for those who sleep on their rights."). Moreover, a petitioner's ignorance of the law, lack of knowledge of filing deadlines, pro se status, illiteracy, and lack of legal training will not support equitably tolling the AEDPA limitations period. *Felder v. Johnson*, 204 F.3d 168, 171–72 (5th Cir. 2000).

Here, Apodaca has not alleged, let alone proven, the existence of exceptional circumstances or that he acted with reasonable diligence. One component of the obligation to pursue rights diligently is not to squander the one-year grace period. *Johnson v. Quarterman*, 483 F.3d 278–88 (5th Cir. 2007). Here, Apodaca waited over three years after his conviction became final to file his state habeas application. It cannot be said that Apodaca was diligent in pursuing relief. Consequently, he is not entitled to equitable

13

tolling and his federal habeas petition should be dismissed with prejudice as untimely.

## CONCLUSION

For the above reasons, the Director respectfully requests that Apodaca's petition for writ of habeas corpus be dismissed with prejudice as time barred and that the Court deny a certificate of appealability.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

s/ Sarah M. Harp
SARAH M. HARP*
*Lead Counsel        Assistant Attorney General
State Bar No. 24092488

P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 936-1400
Facsimile No. (512) 936-1280

ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the above and foregoing pleading has been served by placing it in the United States Mail, postage prepaid, on the 1st day of October 2024, addressed to:

Victor Andrew Apodaca
TDCJ No. 2143720
Michael Unit
2664 FM 2054
Tennessee Colony, Texas 75886

                                        <u>s/ Sarah M. Harp</u>
                                        SARAH M. HARP
                                        Assistant Attorney General